UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**          'O'

| Case No. | CR 14-328-CAS | Date | July 6, 2015 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | David Herzog<br>Justin Rhoades |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendants: | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) DOMINIC DORSEY | X | X | | 1) PHILIP DEITCH | X | | X |
| 2) REGINALD BAILEY | X | X | | 2) JAY LICHTMAN | X | X | |

**Proceedings:**   MOTIONS *IN LIMINE* (Dkt. Nos. 99, 100, 101, 102, 109)

## I.   INTRODUCTION AND BACKGROUND

Defendants Dominic Dorsey ("Dorsey") and Reginald Bailey ("Bailey") are charged with one count of conspiracy to interfere with interstate commerce by robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951(a); five substantive Hobbs Act robbery counts; and five counts of possessing, using, carrying, and brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). See Dkt. No. 1.  Defendants are alleged to have robbed numerous gas stations, a pizza restaurant, and a bank as part of a series of "Cowboy Gun Bandit" robberies in the fall of 2013.  See generally id.  On July 6, 2015, the Court held a hearing on several motions *in limine*, discussed below.

## II.   LEGAL STANDARDS

Most of the motions discussed below seek to exclude evidence under Federal Rules of Evidence 401, 402, and 403.[1]  Under these rules, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Irrelevant evidence is not

---

[1] Unless otherwise stated, subsequent mentions of a numbered "Rule" refer to the Federal Rules of Evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**            **'O'**

admissible," and "[r]elevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or another rule prescribed by the Supreme Court provides otherwise. Fed. R. Evid. 402. Even relevant evidence should be excluded if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[U]nfairly prejudicial evidence is that having 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " United States v. Gonzalez-Flores, 418 F.3d 1093, 1098 (9th Cir. 2005) (quoting Old Chief v. United States, 519 U.S. 172, 180 (1997)).

### III. BAILEY'S MOTION TO EXCLUDE EVIDENCE OF PRIOR CONVICTION

On July 29, 1980, Bailey was convicted by a Washington state jury of robbery in the first degree (while armed with a deadly weapon), and sentenced to a custodial term not to exceed thirty years. Dkt. No. 112 Ex. A at 429–30. Defendant represents that he was released from custody in 1996. Dkt. No. 99 at 2. Through this motion, filed on June 15, 2015, Bailey seeks to exclude evidence of that conviction. Dkt. No. 99. The government opposed the motion on June 22, 2015, taking the position that it should be permitted to introduce evidence of the conviction if Bailey chooses to testify in his defense. Dkt. No. 112.

#### A. Federal Rule of Evidence 609

Rule 609 governs "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). When the witness to be impeached is the criminal defendant, evidence of a conviction for a crime punishable by death or imprisonment for more than one year generally "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant." Id. 609(a)(1)(B). But where

> more than 10 years have passed since the witness's conviction or release from confinement for [the crime], whichever is later . . . [e]vidence of the conviction is admissible only if:
> **(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> **(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**        'O'

Id. 609(b). Courts in the Ninth Circuit consider five factors in balancing the probative evidence of a defendant's prior conviction against its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility." United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) (citing United States v. Browne, 829 F.2d 760, 762–63 (9th Cir. 1987)). "The government bears the burden of showing, based on these factors, that the proffered evidence's probative value substantially outweighs its prejudicial effect." United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995) (citing Browne, 829 F.2d at 763).

Here, because approximately thirty-five years have passed since Bailey's conviction and approximately nineteen years have passed since his release for that conviction, the government must show that the probative value of the evidence "substantially outweighs" its prejudicial effect. With regard to the first factor outlined above, the Ninth Circuit has held that " 'prior convictions for robbery are probative of veracity.' " Id. (quoting United States v. Givens, 767 F.2d 574, 580 (9th Cir. 1985)). Still, without record evidence that a defendant "intend[s] to misrepresent his character or to testify falsely as to his prior criminal record . . . . the impeachment value of . . . prior robbery convictions [is] quite low." United States v. Bagley, 772 F.2d 482, 488 (9th Cir. 1985).

The second and third factors weigh heavily against admission of the prior conviction. As noted, close to two decades have passed since Bailey was released from custody for the prior conviction, and the government has not pointed to any "subsequent history" aside from the charged crimes that would lessen the staleness of this evidence. Furthermore, as the Ninth Circuit has recognized, "[t]o allow evidence of a prior conviction of the very crime for which a defendant is on trial may be devastating in its potential impact on a jury." Id. This is because "where, as here, the prior conviction is sufficiently similar to the crime charged, there is a substantial risk that all exculpatory evidence will be overwhelmed by a jury's fixation on the human tendency to draw a conclusion which is impermissible in law: because he did it before, he must have done it again." Id. As the government itself stresses, "the similarity between Bailey's prior armed robbery and his charged conduct is striking." Dkt. No. 112 at 4. Therefore, evidence of that robbery would be extremely prejudicial.[2]

---

[2] As the government points out, the Ninth Circuit has affirmed the admission of evidence of similar prior convictions. But tellingly, the cases the government cites in its discussion of this factor involved relatively recent convictions under Rule 609(a)(1), rather than convictions old enough to fall under Rule 609(b), which places on the government the burden of showing that the probative value of the prior conviction substantially outweighs unfair prejudice to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**                 **'O'**

The government argues that the fourth and fifth factors favor admission because, if Bailey takes the stand, he will presumably deny his involvement in the alleged robberies. See Alexander, 48 F.3d at 1489 ("When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue."). Even assuming this to be the case, the government has not met its burden of showing that evidence of the prior conviction substantially outweighs its significant prejudicial effect on Bailey, given the decades-old nature of the conviction and its "striking" similarity to the charged crimes. Accordingly, evidence of Bailey's 1980 conviction for robbery is not admissible under Rule 609.[3]

### B. Federal Rules of Evidence 404(b) and 607

Under Rule 404(b), evidence of a defendant's other crimes, wrongs, or other bad acts may be admitted to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). In addition to its Rule 609 arguments, the government contends that evidence of the 1980 conviction is admissible cross-examination material under Rule 404(b) "to show Bailey's 'plan,' 'knowledge,' 'absence of mistake,' and *modus operandi*" because records indicate that Bailey and his accomplices wore face masks and used real guns in the 1980 robbery, just as Bailey is accused of doing here. Dkt. No. 112 at 4. But "in order to admit Rule 404(b) identity evidence on the signature facts or modus operandi theory, the District Court must make a threshold determination that, based solely on the evidence comparing the past acts and the charged offense, a reasonable juror could conclude that the same person committed both crimes." United States v. Carroll, 207 F.3d 465, 469 (8th Cir. 2000). The Court is unpersuaded that the use of face masks and a firearm—common ingredients of armed robbery—are sufficient to permit a juror to conclude that the same person committed both crimes. Nor has the government advanced any other persuasive evidentiary

---

defendant. See Browne, 829 F.2d at 760; Givens, 767 F.2d at 579–80; United States v. Cook, 608 F.2d 1175, 1187 (9th Cir. 1979); United States v. Oaxaca, 569 F.2d 518, 526–27 (9th Cir. 1978) (en banc), overruled on other grounds by Luce v. United States, 469 U.S. 38 (1984).

[3]The government also argues that the conviction should be admitted "should Bailey attempt to portray himself as an upstanding citizen." Dkt. No. 112 at 7. There is no indication on the record that Bailey will testify that he has a spotless criminal record, and—as discussed below—to the extent that the government seeks to impeach Bailey by specific contradiction, the Court reserves judgment on the admissibility of Bailey's prior conviction until trial.

hypothesis for showing that the decades-old conviction should be admissible to show Bailey's plan, knowledge, or absence of mistake.[4]

Relatedly, the government argues that Bailey's testimony may "open the door" to impeachment with the conviction should he, for example, "deny[] any familiarity with firearms or armed robberies." Dkt. No. 112 at 7. "[I]mpeachment by contradiction permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence," and is "properly considered under Rule 607." United States v. Castillo, 181 F.3d 1129, 1132–33 (9th Cir. 1999) (permitting evidence of drug arrest to impeach defendant's "expansive and unequivocal denial of involvement with drugs on direct examination"). The Ninth Circuit has counseled that courts "should err on the side of excluding a challenged prior conviction, with a warning to the defendant that any misrepresentation of his background on the stand will lead to admission of the conviction for impeachment purposes." Cook, 608 F.2d at 1187 (stating that an advance ruling admitting the prior conviction is appropriate "in rare cases"). Accordingly, the Court reserves judgment on this motion insofar as the government seeks to impeach a specific misrepresentation by Bailey on direct examination that he, for example, has never been involved in a robbery or is completely unfamiliar with firearms.

### C.    Conclusion

In accordance with the foregoing, the Court **GRANTS IN PART** Bailey's motion to exclude evidence of his 1980 conviction to the extent he seeks to preclude the government from offering such evidence during its case-in-chief, or from using the conviction to impeach Bailey under Rule 609. The Court reserves judgment insofar as Bailey seeks to preclude the government from impeaching by contradiction specific testimony he may offer at trial.

### IV.   BAILEY'S MOTION TO LIMIT THE SUBJECT MATTER OF ROBBERY VICTIMS' TESTIMONY

Through this motion, filed on June 15, 2015, Bailey seeks to limit testimony from victims of the alleged robberies. Dkt. No. 100. The government opposed the motion on June 22, 2015. Dkt. No. 114.

---

[4] United States v. McCollum, 732 F.2d 1419 (9th Cir. 1983), is inapposite. There, the court admitted an attempted robbery defendant's prior conviction for armed robbery under Rule 404(b) because it rebutted "McCollum's proffered defense that he acted under hypnosis without any intent to rob the bank." Id. at 1424. Here, there is no indication that Bailey will advance a similar defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**  'O'

A.  **Testimony that Victims Did Not Return to Work**

The parties agree that one of the elements of the charged Hobbs Act offenses is that the victims were in fear at the time of the robbery. Dkt. No. 100 at 4; Dkt. No. 114 at 4; see 18 U.S.C. § 1951 (proscribing the taking of property "by means of actual or threatened force, or violence, or fear of injury"). The government seeks to introduce evidence that for some victims, "the fear they felt during the [charged] robberies was so great that they could not return to their jobs after the robberies."[5] Dkt. No. 114 at 4. The government contends that because it must prove that the victims experienced fear, "the jury is entitled to understand the extent of that fear," and that allowing witnesses to "to explain that they were so afraid after the robberies that they could not return to their jobs . . . reflects . . . that the robbers caused significant, rather than minimal or meaningless, fear." Id. Bailey responds that these "post-robbery experience[s]" are irrelevant and would unfairly prejudice him. Dkt. No. 100 at 2.

Neither party cites closely analogous case law. Bailey relies on United States v. Gonzalez-Flores, 418 F.3d 1093 (9th Cir. 2005). In that case, the defendant challenged his conviction for smuggling aliens into the United States on the ground that the district court improperly admitted testimony that two of the smuggled aliens, both young girls, suffered heat strokes. Id. at 1095, 1097. The Ninth Circuit held that such evidence should not have been admitted because the heat strokes did not "go to an element of the charge" and therefore had negligible probative value, but could have motivated the jury "to punish" the defendant for causing the young girls to suffer. Id. at 1098–99. But here, evidence of the robbery victims' fear goes to an element of the charged offenses; therefore, unlike in Gonzalez-Flores, the evidence carries some probative value. The government, on the other hand, cites out-of-circuit cases in the sentencing—not jury trial—context. See United States v. Sawyer, 180 F.3d 1319, 1324 (11th Cir. 1999) (affirming district court's consideration of robbery victim's testimony that she no longer felt safe at work in applying an upward departure for extreme psychological injury); United States v. Bryant, 529 F. App'x 673, 678 (6th Cir. 2013) (rejecting argument that district court had improperly applied upward variance for psychological injuries of bank employees already subsumed in the sentencing guidelines). These cases provide little guidance for this Court's Rule 403 balancing task.

Weighing the disputed evidence's probative value against the significant risk of prejudice from testimony about post-robbery suffering that does not bear on the elements to be proved,

---

[5]The government represents that it will not seek to introduce testimony of the victims' "post-robbery experiences, including their therapy, trauma, nightmares, and/or panic attacks, even if those things resulted from the robberies." Dkt. No. 114 at 1.

and for the reasons stated at the hearing, the Court concludes that the government should be permitted to ask the alleged victims whether fear caused by their robbery experiences persisted, but may not inquire into their post-robbery inability to return to work. In accordance with this understanding, Bailey's motion is **GRANTED IN PART** and **DENIED IN PART**.

### B. Testimony Regarding Guns Used in the Alleged Robberies

The government also seeks to elicit testimony from victims pertaining to the characteristics of the guns used in the robberies. The government seeks to introduce such testimony to prove that the guns were authentic, an element of the 18 U.S.C. § 924(c) firearm charges. See United States v. Garrido, 596 F.3d 613, 617 (9th Cir. 2010) (" 'Possession of a toy or replica gun cannot sustain a conviction under § 924(c).' " (quoting United States v. Westerdahl, 945 F.2d 1083, 1088 (9th Cir. 1991))). The government argues that in this case, where no guns have been recovered so as to be available for trial, "testimony from the eyewitnesses who saw the guns . . . is not only highly relevant and probative, it is necessary: testimony that the guns had the characteristics of real firearms tends to prove that the guns were real firearms." Dkt. No. 114 at 2 (emphasis in original). Defendant contends that such evidence should not be admitted because (1) it lacks "foundation that the witness would know whether the gun was real or was a replica," and (2) it could cause the jury to "improperly find the [§] 924(c) element was proven without sufficient proof." Dkt. No. 100 at 4.

The government has the better of the argument. The Ninth Circuit has found eyewitness testimony to be admissible, and even sufficient, to prove that a gun was real for purposes of § 924(c). See United States v. Harris, 792 F.2d 866, 867–68 (9th Cir. 1986) (affirming § 924(c) conviction where a bank customer "testified that he was familiar with guns, and that th[e] weapon 'was gunmetal' and 'appeared to be either a .38 or .45 automatic,' " even though "[t]he gun was not produced at trial"); United States v. Tubbs, 463 F. App'x 706, 707 (9th Cir. 2011) (unpublished) (finding eyewitness testimony about gun characteristics sufficient to support a finding that defendants "used a real gun during the robbery"). Other circuits have held that the government's proof that a gun is real "need not reach a level of scientific certainty," and that "lay opinion testimony may be employed to propel a finding that an object is in fact a real gun." United States v. Taylor, 54 F.3d 967, 975 (1st Cir. 1995); see also, e.g., United States v. Hunt, 187 F.3d 1269, 1270–71 (11th Cir. 1999) ("[A] § 924(c) conviction may be sustained by lay witness testimony that a defendant carried or used a gun."); Parker v. United States, 801 F.2d 1382, 1384 (D.C. Cir. 1986) (affirming § 924(c) conviction based on testimony from two eyewitnesses); United States v. Jones, 907 F.2d 456, 460 (4th Cir. 1990) ("As five eyewitnesses testified that a gun was used in the robbery, there was evidence from which rational triers of fact could find guilt beyond a reasonable doubt."), superseded by statue on other grounds as stated in United States v. Byrd, 995 F.2d 536 (4th Cir. 1993).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL            'O'**

To the extent that Bailey argues eyewitness testimony may only be used as proof that a gun used in a robbery was real if the witness has extensive experience with firearms or had an unusually close vantage point during the robbery, those arguments lack merit.  In Garridos, on which Bailey relies, the Ninth Circuit held that eyewitnesses "did not have to be experts or have training in weapons identification to testify about what they saw."  596 F.3d at 617; accord Parker, 801 F.2d at 1384.  Another circuit has upheld a § 924(c) conviction based solely on the testimony of witnesses who were "were not familiar with weapons" and "did not observe the gun at close range," reasoning that "the jury was free to credit the testimony of three eyewitnesses that [the defendant] brandished a silver gun with a white handle."  United States v. Jones, 16 F.3d 487, 491 (2d Cir. 1994).  At least two other circuits have reasoned similarly.  See United States v. Moore, 25 F.3d 563, 568 (7th Cir. 1994) ("We hold that bank surveillance video along with testimony, albeit from witnesses with minimal familiarity firearms, that the defendants carried guns, and that they removed bullets from and cleaned those guns, was sufficient to allow the jury to infer that the defendants carried firearms."); Jones, 907 F.2d at 460 (upholding § 924(c) conviction where "the only evidence that a firearm was used came from testimony of witnesses unfamiliar with firearms and from bank photographs").

To the extent Bailey merely argues that the alleged victims should not be permitted to offer lay opinion that the guns used were in fact real firearms without laying a proper foundation, the Court agrees.  But as shown by the cases cited above, it is entirely proper for the alleged victims to testify that the guns they observed had the appearance and characteristics of real firearms.  In accordance with the foregoing, Bailey's motion is **DENIED**.

**V.    BAILEY'S MOTION TO EXCLUDE EVIDENCE OF DORSEY'S 2012 ARREST AS EVIDENCE AGAINST BAILEY**

On November 5, 2012, Dorsey was pulled over by police officers and, according to the police report, consented to a search of his vehicle.  Dkt. No. 101 Ex. B. at 479.  In the vehicle's trunk, officers discovered seven rounds of ammunition "marked with 'WIN 44-40' in [a] black plastic bag."  Id. at 479, 482.  Dorsey was convicted on February 3, 2013, of illegal possession of ammunition in violation of California Penal Code section 30305.  Dkt. No. 113 Ex. A at 337.  Government counsel represents that "following the prosecution, the ammunition was destroyed in the ordinary course of [Los Angeles Police Department] procedures."  Dkt. No. 113 at 1–2.  The series of robberies that form the basis for the instant federal prosecution is alleged to have begun in September 2013.  See Dkt. No. 1 (Indictment) at 2–5.

The government contends that during several of the charged robberies, Bailey brandished a distinctive "Cowboy Gun" revolver.  See Dkt. No. 113 at 2.  As proof that this revolver was real—and its use therefore punishable under 18 U.S.C. § 924(c)—the government intends to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL 'O'

call at trial Senior Special Agent David Hamilton ("Hamilton") of the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). The government represents that Hamilton "will testify about his review of the videos from the robberies and his expert opinion about the type of firearm that is likely depicted in those videos." Id. In a report, Hamilton has opined that the firearm shown on surveillance videos "appears to be a revolver based on the Colt model 1873." Dkt. No. 113 Ex. B at 1. This opinion is based on distinctive features of that firearm—including a flat topstrap, walnut grips, a relatively long 4.75-inch barrel, a sweeping hammer spur, and a tall front sight—seen in one or more of the surveillance videos. Id. at 1–3. The last two paragraphs of Hamilton's report state as follows:

> The suspect firearm appears to be a variant of the Colt model 1873, and it appears that the same firearm was used for each of the eight robberies for which surveillance video was available. However, based on the video evidence alone, it cannot be ruled out that the suspect firearm does not meet the definition of a "firearm" as defined under 18 U.S.C. § 924(a)(3). Although the vast majority of flat topstrap model 1873 variant revolvers were manufactured after 1899, the suspect firearm could be an "antique firearm" not subject to the provisions of the Gun Control Act. The suspect firearm could be a non-firing replica or blank firing prop as used in the entertainment industry. The suspect firearm could be a toy, such as a cap gun or air gun, although the case-hardened frame and wood grips tend to refute that.
>
> Finally, SSA Hamilton reviewed [the aforementioned police report] regarding the recovery of seven rounds of Winchester .44-40 caliber ammunition from [Dorsey] on November 5, 2012. Like the Colt model 1873 revolver, .44-40 ammunition was introduced in 1873, and Colt began chambering revolvers, including the model 1873, for it shortly thereafter. Although a relatively inefficient caliber given modern alternatives, the .44-40 has experienced a resurgence in popularity with the rise of Cowboy Action Shooting. Several manufacturers produce model 1873 revolver variants chambered for .44-40 caliber ammunition. The recovery of .44-40 caliber ammunition from one or the suspects of the robberies noted above tends to lend credence to the theory that the suspect firearm is a "firearm" as defined [in section § 924(c)].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**             **'O'**

Id. at 3 (paragraph numbers omitted). The government anticipates that Hamilton will testify "that Dorsey's possession of the .44-40 caliber ammunition is a factor [Hamilton] considered in analyzing the possible make and model of the firearm in question." Dkt. No. 113 at 3.

On June 15, 2015, Bailey moved to preclude the government from offering through Hamilton's testimony evidence from Dorsey's 2012 arrest for possession of ammunition or, in the alternative, for a Daubert hearing. Dkt. No. 101. The government opposed the motion on June 22, 2015. Dkt. No. 113.

    **A.**     **Improper Expert Testimony**

First, Bailey argues that Hamilton's proposed testimony is inadmissible under Rules 702 and 703. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. The Rule 702 inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592–93 (1993). The district court must also "ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. . . . Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact." United States v. Finley, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing Daubert, 509 U.S. at 591–93). Daubert's "gatekeeping obligation" applies not only to testimony based on 'scientific knowledge' but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Company v. Carmichael, 526 U.S. 137, 141 (1999). "[I]n considering the admissibility of testimony based on some 'other specialized knowledge,' Rule 702 generally is construed liberally." United States v. Hankey, 203 F.3d 1160, 1168 (9th Cir. 2000).

Although Bailey cites Rule 702 and requests a Daubert hearing, he advances no specific argument questioning Hamilton's qualifications or methodology. Hamilton has been a Special Agent with ATF since 2000, and before that gained professional experience with firearms through employment with the Immigration and Naturalization Service, Central Intelligence Agency, and Marine Corps. Dkt. No. 101-1 at Page ID No. 822. He "regularly examine[s] firearms and ammunition for the purpose of identification, classification, and determination of origin," and "regularly consult[s] with persons who are experts in the field of firearms identification and classification, as well as with firearm and ammunition manufacturers and importers." Id. He has received and provided specialized training on firearm and ammunition subjects including identification, and has previously testified as a firearms and ammunition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**            **'O'**

expert in courts including this one. Id. In this case, he analyzed eight surveillance videos of the alleged robberies and concluded, on the basis of features visible in those videos, that the suspect gun is a variant of the Colt model 1873 revolver. Hamilton further relied on visual evidence of the gun's "color case-hardened frame and wood grips," as well as the police report linking Dorsey to ammunition that could be used in a Colt model 1873 gun, as indications "tend[ing] to lend credence to the theory" that the suspect gun is a "firearm" within the meaning of § 924(c). Dkt. No. 113 Ex. B at 3. The Court finds Hamilton to be qualified to testify as an expert based on his training and experience, and concludes that he has articulated a reliable methodology applicable to the facts at hand. See United States v. Clawson, 831 F.2d 909, 912–13 (9th Cir. 1987) (affirming admission of ATF agent's testimony based on his "comparison of the gun with pictures in catalogs, firearms manuals, and reference publications"); United States v. Gann, 732 F.2d 714, 724–25 (9th Cir. 1984) (approving admission of ATF agent's opinion on manufacturer of guns based on "characteristic shell markings and stamps"); United States v. Cormer, 468 F.3d 63, 72 (1st Cir. 2006) (noting that an ATF agent may offer expert testimony based on "technical manuals, conversations with manufacturers, and the expert's prior experience"). The testimony also appears to be helpful to the jury: knowledge of which types of ammunition pair with a certain type of revolver is beyond the common knowledge of the average juror, and Hamilton's testimony (if credited) it makes it more likely that the gun at issue was genuine. See Finley, 301 F.3d at 1008.[6]

      Bailey's most substantial argument pertains to Hamilton's reliance on the police report indicating that the ammunition found in Dorsey's trunk was .44-40 caliber, which Bailey contends is improper under Rule 703. That Rule provides:

---

[6]To the extent Bailey objects to Hamilton's testimony because Hamilton cannot determine with certainty whether the gun seen in the videos would "use the precise ammunition found in Mr. Dorsey's vehicle," Dkt. No. 101 at 3, that argument is unpersuasive. Hamilton carefully states that the fact that the ammunition could be used in a Colt model 1873 variant is a fact that "tends to lend credence to the theory that" the gun is real. Daubert does not require certainty from experts, and Bailey may probe Hamilton's lack of certainty through cross-examination or a competing expert. See Daubert, 509 U.S. at 590 ("[I]t would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty."); Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."); United States v. Rahm, 993 F.2d 1405, 1412 (9th Cir. 1993) ("Certainty is an unreasonable expectation in the realm of expert opinion.").

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. "Under Rule 703, experts can testify to opinions based on inadmissible evidence, including hearsay, 'if experts in the field reasonably rely on such evidence in forming their opinions.' " United States v. Mejia, 545 F.3d 179, 197 (2d Cir. 2008) (quoting United States v. Locascio, 6 F.3d 924, 938 (2d Cir. 1993)).

      Bailey relies on United States v. Santini, 656 F.3d 1075 (9th Cir. 2011) (per curiam), in which the defendant was convicted for importing marijuana and possessing marijuana with intent to distribute. Id. at 1077. His defense at trial, supported by an expert psychologist's testimony, was that he was easily manipulable due to a traumatic brain injury, and was tricked into carrying the marijuana across the border. Id. The government rebutted this expert testimony through a psychiatrist who opined that Santini's injury did not make him more vulnerable to manipulation. This opinion was based largely on the psychiatrist's review of Santini's "rap sheet" showing "extensive" contacts with law enforcement before the injury. Id. at 1077–78. The Ninth Circuit held admission of this testimony erroneous under Rule 703. Id. at 1078–79. First, the court reasoned that the rap sheet was "not sufficient to form the basis of [the expert's] opinion that Santini had engaged in 'similar' criminal behavior prior to his brain injury" because it showed prior convictions for simple possession, indecent exposure and assault—very different crimes than the importation of large amounts of marijuana. Id. The court also stated that the psychiatrist could not "express an opinion relying on data that requires expertise in another field," specifically, "a rap sheet that would require interpretation by an expert in law enforcement record-keeping." Id. Finally, the court found that the "statement that Santini had 'extensive' prior law enforcement contacts was far more prejudicial than it was probative in assisting the jury to evaluate [the expert's] opinion." Id. at 1079. Bailey argues that Santini requires exclusion of Hamilton's testimony because Hamilton "would rely on the expertise of the arresting officer who determined that the ammunition found in Dorsey's vehicle was of a particular caliber." Dkt. No. 101 at 6.

      Santini is inapposite. Unlike the psychiatrist in that case, Hamilton does not propose to express an opinion based on "data that requires expertise in another field"; rather, he will testify based on data within his field of expertise (ammunition and firearms) that was recorded by a

different law enforcement officer based on markings on the ammunition's packaging. The relevant question is whether "experts in the particular field [of firearm identification] would reasonably rely on those kinds of facts or data [police reports] in forming an opinion." See Fed. R. Evid. 703. The Court concludes that such reliance is reasonable. The Ninth Circuit and other courts have permitted ATF agents to base expert opinions on information sources they did not themselves produce. See Clawson, 831 F.2d at 912–13; Gann, 732 F.2d at 724–25; Cormer, 468 F.3d at 72. And courts have routinely permitted experts in other fields to rely on police reports in formulating their opinions. See, e.g., Ratliff v. Schiber Truck Co., 150 F.3d 949, 955 (8th Cir. 1998) (accident reconstruction); United States v. Brown, 7 F.3d 648, 653 (7th Cir. 1993) (narcotics distribution). Allowing Hamilton to rely on information a fellow law enforcement officer wrote in a police report is akin to permitting an expert physician to consider "reports and opinions from nurses, technicians and other doctors," which the architects of Rule 703 expressly approved. See Fed. R. Evid. 703 advisory committee's notes. The Court also concludes that this evidence's probative value in helping the jury to understand Hamilton's opinion substantially outweighs its prejudicial effect. For these reasons, the Court rejects Bailey's arguments that Hamilton's testimony must be excluded under Rules 702 and 703, and finds that no Daubert hearing is required. Bailey may, of course, attack Hamilton's opinions and their bases through cross-examination or an expert of his own.

    **B.**     **Federal Rule of Evidence 403**

Bailey also argues that evidence that Dorsey possessed .44-40 caliber evidence should be excluded under Rule 403. Bailey argues that the "fact that Mr. Dorsey alone possessed the ammunition more than ten months prior to the commission of the robberies has minimal probative value connecting Mr. Bailey to commission of the robberies," and could influence the jury to convict Bailey on an improper basis. Dkt. No. 101 at 8–9.[7] But the government contends—with some supporting evidence, including distinctive characteristics apparently shared between Bailey and one of the suspects in the videos Hamilton analyzed—that it was Bailey who brandished the "Cowboy Gun." The fact that Dorsey, Bailey's alleged co-conspirator and accomplice, possessed ammunition that could be used with several Colt model 1873 variants, makes it "more probable . . . than it would be without the evidence" that the "Cowboy Gun" was in fact a real firearm. Nor does Bailey offer any authority to support his contention that admitting evidence of the ammunition would unfairly suggest that the gun was loaded at the time of the robberies. In sum, Bailey has identified no specific unfair prejudice

---

    [7]Bailey also argues that Dorsey's arrest for illegal possession of ammunition may not be admitted as "other act" evidence under Rule 404(b). Dkt. No. 101 at 7–8. But the government is not attempting to introduce evidence of the arrest under that Rule.

from this evidence that would "substantially outweigh" its probative value. Moreover, the risk of unfair prejudice can be mitigated through a limiting instruction to the effect that the jury should consider this evidence only as bearing on whether a real firearm was used in the commission of the alleged robberies.[8]

### C. Destruction of Evidence

Finally, Bailey references the fact that the ammunition has been destroyed. The Constitution requires that law enforcement agents preserve evidence that "possess[es] an exculpatory value that was apparent before the evidence was destroyed" and is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984). The Supreme Court has held, however, that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Moreover, "[t]he exculpatory value of an item of evidence is not 'apparent' when the evidence merely 'could have' exculpated the defendant." United States v. Drake, 543 F.3d 1080, 1090 (9th Cir. 2008) (emphasis in original) (quoting Youngblood, 488 U.S. at 56 n.*).

Bailey concedes that the ammunition "does not appear exculpatory," and that he has no basis for "claiming that the officers acted in bad faith."[9] Dkt. No. 101 at 9. Moreover, because the first of the charged robberies postdated by nearly eight months Dorsey's guilty plea for possession of the ammunition, it seems implausible that the ammunition's destruction was motivated by a desire to hamper a defense of the subsequent robbery charges. Therefore, as Bailey admits, he cannot make out a due process violation under Trombetta and Younglood. Bailey nevertheless contends that because the defense is "deprived of the opportunity to have the ammunition examined by a firearms expert," the "denial of access to evidence adds to the prejudicial impact of admitting the evidence." Id. But in the absence of any showing of bad faith, this argument is unpersuasive. See United States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997) ("The mere failure to preserve evidence which could have been subjected to tests which might have exonerated the defendant does not constitute a due process violation."). This

---

[8] Bailey's argument that admitting evidence of the ammunition would amount to an improper variance of the indictment by "imply[ing] that the alleged conspiracy began well before the commission of the robberies," Dkt. No. 101 at 6–7, is unpersuasive and speculative.

[9] The government has represented that the ammunition was destroyed pursuant to standard police practices. Dkt. No. 113 at 1–2.

is especially so because "it is possible that [the ammunition] would have further incriminated" the defendants rather than exculpating them. Drake, 543 F.3d at 1090.

### D. Conclusion

In accordance with the foregoing, Bailey's motion to preclude Hamilton from testifying to opinions informed by the police report regarding Dorsey's possession of .44-40 caliber ammunition is **DENIED**.

## VI. DORSEY'S MOTION TO EXCLUDE CHARACTER EVIDENCE

On June 15, 2015, Dorsey moved for an order "prohibiting the prosecution from submitting any evidence of alleged misconduct involving alleged criminal conduct or any other ongoing investigations for which [Dorsey] is not indicted in the instant case." Dkt. No. 102 at 1. On June 19, 2015, Dorsey filed a "supplement" to that motion seeking to exclude evidence of an additional prior conviction. Dkt. No. 109. Dorsey contends that the categories of evidence covered by his motion are inadmissible under Rules 401, 402, 403 and 404. The government opposed both filings on June 22, 2015, disclaiming any intention of offering the objected-to evidence in its case-in-chief, but arguing that it could be admissible for impeachment or rebuttal. Dkt. No. 115.

### A. Dorsey's 2008 Assault Conviction

In May 2008, Dorsey pleaded guilty to assault with a deadly weapon other than a firearm, in violation of California Penal Code section 245(a)(1), and was sentenced to 180 days in county jail and three years' probation. Dkt. No. 115 Ex. A. At 365, 387. Penal Code section 245(a)(1) is a felony punishable by imprisonment of up to four years. Cal. Penal Code § 245(a)(1) (West) (effective Jan. 1, 2005 to Dec. 31, 2011). Dorsey contends that evidence of this conviction should be excluded from trial entirely. See generally Dkt. No. 109. The government concedes that the prior conviction is not admissible in its case-in-chief, but argues that if Dorsey testifies, the government should be permitted to impeach his credibility with the conviction under Rules 609, or under Rules 404(b) and 607 depending on the content of Dorsey's testimony.

#### 1. Federal Rule of Evidence 609

When less than ten years have passed since a criminal defendant-witness's conviction or release from confinement, evidence of the witness's conviction "for a crime that, in the convicting jurisdiction, was punishable by death or imprisonment for more than one year"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**　　　　　　'O'

"must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1). As stated above, five factors are relevant to balancing the probative evidence of a defendant's prior conviction against its prejudicial effect: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility." United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000) (citing United States v. Browne, 829 F.2d 760, 762–63 (9th Cir. 1987)). The government bears the burden of showing the prior conviction's admissibility. Browne, 829 F.2d at 763.

　　　　As to the impeachment value of the prior crime, the Ninth Circuit has affirmed admission of a prior conviction for "assault with a deadly weapon," implying that such a conviction may have some relevance to a witness's credibility. See United States v. Givens, 767 F.2d 574, 579–80 (9th Cir. 1985); see also United States v. Swint, No. CR 12-08080, 2012 WL 3962704, at *1 (D. Ariz. Sept. 11, 2012) (admitting evidence of prior assault conviction), aff'd, 566 F. App'x 618 (9th Cir. 2014). Still, the impeachment value of a conviction for assault—which requires no deceit or untruthfulness—is not highly probative of Dorsey's credibility. See United States v. Castor, 937 F.2d 293, 298 (7th Cir. 1991) (recognizing the "limited impeachment value" of a prior battery conviction "unrelated to truthfulness"); United States v. Hayes, 553 F.2d 824, 827 (2d Cir. 1977) (stating that "crimes of force, such as armed robbery or assault" do not "bear directly on the likelihood that the defendant will testify truthfully"); Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967) ("Acts of violence . . . which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity."); 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 609.23 (2d ed. 2008) ("A 'rule of thumb' thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent assaultive crimes generally do not."). Accordingly, the first relevant factor suggests that the probative value of Dorsey's 2008 conviction is low.

　　　　Turning to the second factor, Dorsey was convicted over seven years ago. Although the government is correct that the conviction is less than ten years old and therefore does not fall under Rule 609(b), it is still old enough that the second factor does not strongly favor admission of the prior conviction.

　　　　As to the third factor, although the charged offenses are distinct from that to which Dorsey pleaded guilty in 2008, armed robbery and assault with a deadly weapon are both crimes of violence, and the charged robberies were accomplished through alleged threats of deadly force. See United States v. Franklin, 64 F. Supp. 2d 435, 438 (E.D. Pa. 1999) (deferring until trial robbery defendant's motion to exclude impeachment through prior burglary and assault

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**           'O'

convictions, but noting that although the defendant was "not charged with either a burglary or assault in the present case," there was "some similarity to the present offense"). Because there is a significant risk that the jury could improperly consider the prior assault conviction as making it more likely that Dorsey committed the charged robberies, this factor weighs against admission.

As the government acknowledges, the fourth and fifth factors are difficult to analyze in the pretrial context, and there is little in the record from which to predict the importance of Dorsey's testimony and credibility. The Court notes, however, that this is not a case where the only evidence before the jury will be the conflicting narratives of a small number of witnesses; rather, the government plans to present video evidence, eyewitness accounts, expert testimony, and other types of proof. On balance, the Court finds that the government has not met its burden of showing that evidence of Dorsey's 2008 assault conviction is sufficiently probative of his veracity to outweigh the significant risk of unfair prejudice from putting before the jury a past crime of violence. The government's arguments that Dorsey's testimony and credibility may become critical depending on the content of his direct testimony are better addressed in the context of trial and under the distinct Rules of Evidence discussed below. Accordingly, to the extent Dorsey seeks to preclude the government from offering evidence of his 2008 conviction under Rule 609 if Dorsey takes the stand, the Court **GRANTS IN PART** his motion.

        2.      Federal Rules of Evidence 404(b) and 607

The government also argues that Dorsey's testimony could "open the door" to impeachment with evidence of the 2008 conviction. See United States v. Castillo, 181 F.3d 1129, 1132–33 (9th Cir. 1999) (permitting evidence of drug arrest to contradict defendant's "expansive and unequivocal denial of involvement with drugs on direct examination"). The Court finds that whether Dorsey's 2008 conviction may be admissible to impeach specific testimony is better decided in the context of trial, and therefore defers ruling on this motion to that extent Dorsey seeks to preclude the government from offering his 2008 conviction to impeach his specific testimony by contradiction.

       **B.**      **Evidence of Ammunition Found During Dorsey's November 2012 Arrest**

Dorsey joins Bailey's motion seeking to exclude evidence of the ammunition found during Dorsey's November 2012 arrest. For the reasons stated above, however, the Court finds that evidence to be admissible, and **DENIES** the motion to exclude it.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**   'O'

  **C.**  **Other Categories of Evidence**

  Through this motion, Dorsey also seeks to exclude evidence of (1) his alleged possession of marijuana at the time of his November 2012 arrest; (2) a May 2014 child abuse claim that has not led to criminal charges; (3) his purported gang membership; (4) his alleged involvement with pimping; and (5) supposed extramarital affairs. See Dkt. No. 102 at 7–9.

  The government states that it will not seek to introduce any of this evidence in its case-in-chief. Dkt. No. 115 at 3. Nevertheless, the government asserts that if Dorsey testifies, some of this evidence may become relevant to impeach or rebut his testimony under Rules 404(b) and 607. For example, the government argues that if Dorsey "claim[s] that all of his income is derived from non-criminal sources," the government should be permitted "to introduce testimony from women who engaged in acts of prostitution at Dorsey's direction and gave Dorsey money earned in that manner." Dkt. No. 115 at 9. The government also asserts that it "will seek to introduce evidence of Dorsey's possession of marijuana, alleged child abuse, and alleged gang membership only if Dorsey 'opens the door' to those topics by testifying that he has never used or possessed drugs, is an exemplary father who has never had an allegation of child abuse levied against him, and/or is not a gang member." Id. at 9–10.

  Because the government disclaims any intention of introducing this evidence in its case-in-chief and its arguments for admissibility are necessarily contingent on whether and how Dorsey testifies, the Court defers ruling on the admissibility of this evidence for impeachment until trial.

  IT IS SO ORDERED.

|  | 00 | : | 15 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |