UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**      'O'

| Case No. | 2:14-CR-00328-CAS-1 | Date | May 23, 2022 |
|---|---|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER | | |
| Interpreter | N/A | | |

| Catherine Jeang | Laura Elias | Jeffrey Chemerinksy |
|---|---|---|
| *Deputy Clerk* | *Court Reporter* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant: | Present | Cust. | Bond | Attorneys for Defendant: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| DOMINIC DORSEY | NOT | X | | MICHAEL TANAKA | X | | X |

**Proceedings:**    MOTION FOR MODIFICATION OF TERM OF IMPRISONMENT UNDER 18 U.S.C. § 3582(c)(1) (Dkt. 479, filed on June 25, 2021)

## I. INTRODUCTION

On July 26, 2021, defendant Dominic Dorsey filed this motion for modification of the terms of his imprisonment pursuant to 18 U.S.C. § 3582(c)(1) ("Section 3582"). Dkt. 479 ("Mot."). The government opposed on August 9, 2021, dkt. 486 ("Opp."), and defendant replied on August 17, 2021, dkt. 488 ("Reply"). On August 30, 2021, the Court continued consideration of defendant's motion to November 1, 2021, in part "to allow the parties to obtain and provide the Court with more information [] regarding [defendant's] rehabilitation, to the extent it is available." Dkt. 491. At the November 1, 2021 hearing, the Court reserved judgment on defendant's motion, and requested that defendant's counsel file a status report regarding defendant's condition. Dkt. 492. On March 7, 2022, defendant filed the status report, dkt. 496 ("St. Rep."), and the report of Dr. Audrey Nath, a practicing neurologist, dkt. 500 ("Nath Rep."). Nath's report is based on her review of "1100 pages of Mr. Dorsey's medical records from the hospitals where he was treated following his stroke and those of the Bureau of Prisons." St. Rep. at 3.

The Court held a hearing on May 23, 2022. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

On July 26, 2016, defendant and a co-defendant were convicted at retrial of one count of conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a); five counts of Hobbs Act robbery; and five counts of brandishing a firearm in furtherance of, and during and in relation to, each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          'O'

Hobbs Act robbery, 18 U.S.C. § 924(c)(1)(A)(ii). Dkt. 235. Defendant and his co-defendant, Reginald Bailey, robbed at gunpoint several gas stations and a retail bank. Among other things, defendant and Bailey struck a gas station attendant over the head with a cash register.

Upon the guilty verdict, on May 31, 2019, this Court sentenced defendant to 40 years and one day imprisonment, followed by a three-year term of supervised release. Dkt. 353. This sentence reflected the statutory mandatory minimum, specifically, seven years for each of the five counts of robbery committed with a firearm, to be served consecutively. Id.; see 18 U.S.C. § 924(c)(1)(A)(ii). At the time of sentencing, defendant was in criminal history category III based in part on three prior convictions: possession of a controlled substance, misdemeanor assault with a deadly weapon, and misdemeanor possession of ammunition as a felon. Dkt. 333 ("PSR") ¶¶ 97–99, 102.

Defendant began serving his term in the custody of the Bureau of Prisons ("BOP") at United States Penitentiary Victorville. Mot. at 2. On September 13, 2020, defendant suffered an acute stroke. Id. at 2, 3. According to his BOP medical records, defendant was admitted to a local hospital on September 15, 2019, due to signs of a stroke. Dkt. 483, Exh. C ("Med. Records") at 7. A note entered on September 17, 2019, reports that a CT scan of defendant's head and an MRI of his brain revealed a non-hemorrhagic acute stroke of the left brain. Id. Defendant had incoherent speech and paralysis of his upper and lower extremities on his right side. Id.

Defendant was transferred to a rehabilitation hospital on October 1, 2020, where he received physical therapy, occupational therapy and SLP (undefined) five days per week. Id. at 1. A medical record dated October 22, 2020, reports that defendant had "somewhat more strength in RUE [right upper extremity] and RLE [right lower extremity] as he is able to transfer from wheelchair to bed, but only with supervision. Additionally, he is able to ambulate with walker 200 feet, but only with supervision." Id. The record goes on to state that defendant was "[s]till using wheelchair mainly, but trying to increase time with walker. However, needs significant reinforcement and cues from Rehab Team." Id. Defendant still needed "moderate assistance" with verbal expression. Id.

At some point apparently in February 2021, defendant was transferred to United States Medical Center for Federal Prisons, Springfield, Missouri ("MCFP Springfield"). Opp. at 5. As of February 18, 2021, BOP medical records indicate that defendant suffers a "[s]elf-[c]are deficit related to inability to perform ADL's [activities of daily living] independently," and that defendant "requires assistance with ADL's to include turning/repositioning, tray set up, showering, dressing and diaper care." Med. Records at 31.

Defendant's status report and the Nath report indicate that defendant suffers from a "moderate disability." Nath Rep. at 4. According to Nath, because defendant has "right-sided

CRIMINAL MINUTES – GENERAL               'O'

weakness and slow ambulation with a rolling walker well after 3-6 months after his stroke, it is unlikely that Mr. Dorsey will make significant gains beyond this moderate level of disability." Id. at 5. Nath also found that, with respect to whether Dorsey may pose a physical threat to others, "given [defendant's] noted right arm and leg weakness, it is unlikely that he would be able to have the ability to ambulate swiftly and use his hands to mount a powerful physical assault on another individual." Id. "Nath added that because "the physical examinations of Mr. Dorsey from August to October 2021 were performed by different providers, and all support a moderate level of disability well after the 3-6 month post-stroke period, it is unlikely that another examination from yet another provider at this time would yield a different prognosis." Id. Finally, Nath found that defendant is at risk for additional strokes due to hypertension. Id.

Defendant, with the assistance of counsel, filed a request for a reduction of sentence and a request that the BOP file a motion on defendant's behalf pursuant to Section 3582(c)(1)(A). Mot. at 2. On May 23, 2021, the warden at MCFP Springfield denied the request. Dkt. 479-2, Exh. B. The warden conceded that defendant was "in a debilitated medical condition as defined by section 3(b)" of the BOP Program Statement No. 5050.50, but nevertheless concluded that, "in light of the nature and circumstances of Mr. Dorsey's offense and his criminal history, his release at this time would minimize the severity of his offense and pose a danger to the community." Id. at 3; see BOP, Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited August 2, 2021) ("Program Statement 5050.50"). According to the Program Statement, an inmate is in a debilitated medical condition when he is "[c]ompletely disabled, meaning the inmate cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Program Statement 5050.50 at 5.

After the warden denied his request, defendant filed the instant motion for compassionate release. Defendant has served approximately eight years of his 40-year sentence.

### III. LEGAL STANDARD

"A judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances." Dillon v. United States, 560 U.S. 817, 824 (2010) (alterations omitted). "Compassionate release provides an exception" to this general rule "in extraordinary cases." United States v. Holden, No. 3:13-cr-00444-BR, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020).

Prior to December 21, 2018, "the Court could only reduce a sentence of imprisonment upon a motion of the Director of the Bureau of Prisons[.]" United States v. Esparza, No. 1:07-cr-00294-BLW, 2020 WL 1696084, at *1 n.1 (D. Idaho Apr. 7, 2020). But on December 21, 2018,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES – GENERAL           'O'

Congress enacted—and the President signed into law—the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("FSA"), "with the intent of 'increasing the use and transparency of compassionate release.'" United States v. Willis, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Accordingly, the FSA now "permits defendants to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons." United States v. Ayon-Nunez, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *2 (E.D. Cal. Feb. 12, 2020). "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, No. 03-cr-06033-L, 2020 WL 1908911, at *3 n.3 (W.D.N.Y. Apr. 20, 2020).

"Compassionate release is governed by 18 U.S.C. § 3582(c)." Willis, 382 F. Supp. 3d at 1187. The FSA modified Section 3582(c)(1)(A)(i) to allow for compassionate release when three requirements are met: "First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. Second, a district court may grant compassionate release only if 'extraordinary and compelling reasons warrant such a reduction' . . . . Third, the district court must also consider 'the factors set forth in Section 3553(a) to the extent they are applicable.'" United States v. Rodriguez, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); see 18 U.S.C. § 3553(a) ("Section 3553(a)"). The FSA "grants broad discretion to the district courts in providing relief[.]" Jones v. United States, No. 4:98-cr-10-01, 2020 WL 219311, at *3 (E.D. Va. Jan. 6, 2020).

### IV. DISCUSSION

#### A. Exhaustion of Administrative Remedies

"[A] court may not consider a motion brought under § 3582(c)(1)(A) unless (1) the Director of the BOP has filed the motion on the inmate's behalf, or (2) the inmate has requested that the BOP make such a motion and either (a) the inmate has 'fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the [inmate]'s behalf,' or (b) 30 days have elapsed since the 'warden of the [inmate]'s facility' received a compassionate-release request from the inmate." United States v. Keller, 2 F.4th 1278, 1281 (9th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (alterations in original). This "administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked." Id. at 1282.

Here, defendant has met this requirement because the warden of MCFP Springfield denied his request for compassionate release on May 23, 2021, and defendant filed this motion more than 30 days later, on June 25, 2021.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES – GENERAL                    'O'

### B. Extraordinary and Compelling Reasons

Section 3582(c) "provides a path for defendants in 'extraordinary and compelling circumstances' to be released from prison early." Rodriguez, 424 F. Supp. 3d at 681 (quoting 18 U.S.C. § 3582(c)(1)(A)). "Congress provided no statutory definition of 'extraordinary and compelling reasons.'" United States v. Aruda, 993 F.3d 797, 800 (9th Cir. 2021). Instead, Congress tasked the Sentencing Commission with "promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)," including "what should be considered extraordinary and compelling reasons for sentence reduction . . . ." 28 U.S.C. § 994(t).

The Sentencing Commission issued a policy statement regarding "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" at U.S.S.G. § 1B1.13. However, this policy statement pre-dated the FSA, and the Ninth Circuit has now held that it is not an "applicable policy statement[]" under Section 3582. Aruda, 993 F.3d at 802; see 18 U.S.C. § 3582(c)(1)(A)(i). In so doing, the Ninth Circuit cited approvingly to the Fourth Circuit's conclusion that, in the absence of an applicable policy statement, "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (quoting United States v. Brooker, 976 F.3d 228, 234–37 (2d Cir. 2020)) (alteration and emphasis in original). Nevertheless, the Ninth Circuit advised that, although not binding, "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant . . . ." Aruda, 993 F.3d at 802.

Defendant argues that, although he has made small gains in recovering from his stroke, he nonetheless remains dependent upon others for many daily activities, including, as noted above, turning and repositioning in bed, showering, setting up his tray, dressing, and diaper care. Mot. at 4. Defendant argues that these deficits, "by definition, 'diminish the ability of [Mr. Dorsey] to provide self-care within the environment of a correctional facility.'" Id. (quoting U.S.S.G. § 1B1.13, cmt. 1(A)) (alteration in original). In addition, defendant argues that the risk of becoming seriously ill from COVID-19 is exacerbated by his having had a stroke.[1] Id. And he argues contracting COVID-19 may increase the likelihood of his experiencing a second stroke. Id. Finally, defendant argues that his imprisonment at MCFP Springfield increases his risk of contracting COVID-19. Id. at 5.

The government responds that, although defendant "undoubtedly suffers from real medical conditions . . . none of his health conditions warrant his release from custody," particularly

---

[1] It appears defendant has not contracted COVID-19, see Med. Records at 28, although he has also apparently declined to be vaccinated, id. at 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**                                           **'O'**

considering defendant requests a permanent, 80% reduction in his sentence. Opp. at 11. Furthermore, the government argues that defendant has not shown "how the extensive care he is receiving from the BOP is substandard or lacking." Id. Finally, the government contends that the threat of COVID-19 cannot constitute an extraordinary and compelling reason for release. Id. at 12.

In reply, defendant argues that whether his condition may be managed in prison is not the issue. Reply at 7. Rather, defendant contends that he need only show that he is in a debilitated medical condition and is unable to care for himself. Id. at 8. In that respect, defendant reiterates that "no evidence even hints that [defendant] would recover significant function on his right side." Id. at 7.

Defendant has suffered what appears to be a major stroke and, according to the BOP, was in a debilitated medical condition. There is some suggestion that the BOP does not expect defendant to fully recover. See dkt. 479-2, Exh. B at 1. On the other hand, defendant's medical records from October 2020, and February 2021, indicate some improvement in his condition. Moreover, it appears that, at this time, defendant's condition can be adequately managed at MCFP Springfield. Although defendant may not make a full recovery on his right side, he is able to walk with the assistance of rolling walker. Nath Rep. 4-5. Additionally, there is no reason that defendant's hypertension and right-side weakness cannot be managed in BOP custody. In sum, the Court finds that defendant's condition, which appears to be a "moderate disability," is not an extraordinary and compelling reason that justifies an 80% reduction in his sentence, especially given the serious nature of defendant's criminal conduct.

### C. Consistency with Section 3553(a) Factors

To the extent that defendant has otherwise satisfied Section 3582(c)'s requirements, the Court must further "consider the factors set forth in section 3553(a) to the extent they are applicable . . . ." United States v. Redd, No. 1:97-cr-00006-AJT, 2020 WL 1248493, at *8 (E.D. Va. Mar. 16, 2020). These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the sentencing range established in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citing 18 U.S.C. § 3553(a)(1)–(7)).

Defendant concedes that the offenses for which he was convicted are undoubtedly serious. Mot. at 5. Nevertheless, defendant argues, this alone should not preclude compassionate release. Id. at 5–6. Defendant adds that he has served seven years of his sentence, and that the Court

acknowledged, at sentencing, that the mandatory minimums imposed were excessively harsh. Id. at 6–7. Furthermore, defendant argues his physical incapacity will relegate him to life in bed or in a wheelchair, thus diminishing any threat to the public he might once have posed. Id. at 7. Finally, if released, defendant argues he would be able to receive adequate medical care. Id. He plans to live with his mother, Brenda Grayton, who is a trained nurse living in Washington, D.C. Id. Grayton would be supported by other family members and friends. Id.

The government responds that defendant poses a danger to the community.[2] Opp. at 14. Specifically, the government argues that defendant's spree of armed robberies "left a series of victims in its wake, many of whom were still traumatized years later," and that "[t]hese gun crimes posed a serious and grave danger to innocent human life." Id. Defendant's criminal history also suggests he poses a danger to the community, id. at 15, and, the government argues, nothing in the record indicates defendant has shown remorse, taken responsibility, or otherwise indicated he is not a danger to the community. Id. at 14. The government also argues the nature of the offense weighs against release, that defendant has made no showing that the BOP cannot adequately treat his medical needs, and that, in any event, defendant has a history of noncompliance with medical recommendations. Id. at 17. Finally, the government argues that granting compassionate release at this juncture would be inconsistent with Section 3553(a) because an approximately 85-month sentence served would be well below the sentencing guidelines range of 517 to 540 months. Id. at 18.

In reply, defendant argues that the government overstates defendant's "'long-standing affinity for violent crime.'" Reply at 4 (quoting Opp. at 1, 4). Rather, argues defendant, his "long-standing affinity for violent crime" consists of "a single misdemeanor non-firearm assault with a deadly weapon." Reply at 4 (citing PSR ¶ 98). Moreover, defendant restates his argument that his stroke renders him physically uncapable of posing a danger to others. Reply at 4. Therefore, despite the offenses of his conviction, defendant contends he is not a danger to the community. Id.

The nature and circumstances of defendant's crimes of conviction are serious. The record does not indicate that defendant has taken any steps toward rehabilitation nor toward accepting responsibility for his crimes. Furthermore, defendant's history and characteristics suggest he

---

[2] In its opposition, the government argues that the Court "may not reduce a defendant's sentence unless it finds that 'the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" Opp. at 13 (quoting U.S.S.G. § 1B1.13). However, as discussed above, Section 1B1.13 is not binding on this Court. Aruda, 993 F.3d at 802. Nevertheless, it is appropriate to consider the danger posed by a defendant when considering the nature and characteristics of the defendant under Section 3553(a), which the Court does here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES – GENERAL**          **'O'**

would be a danger to the community if released. While this Court previously found that Bailey no longer posed a danger to the community on account of a debilitating medical condition, see United States v. Dorsey, et al., 2:14-cr-00328-CAS-2, dkt. 477 (C.D. Cal.), Dorsey's disability is "moderate," and does not preclude him from posing a danger to the community. Accordingly, at this time, the Court finds that the Section 3553(a) factors do not weigh in favor of release.

### V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendant's motion for compassionate release, **WITHOUT PREJUDICE**. If appropriate, defendant may renew his motion after six months from the date of this order.

IT IS SO ORDERED.

|  | 00 | : | 07 |
|---|---|---|---|
| Initials of Deputy Clerk | | CMJ | |